UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------------x
ERIC LANDON, individually and on behalf of all others
similarly situated,

                                        Plaintiff,

            - against -                                08-CV-8048 (CS) (LMS)

COUNTY OF ORANGE, THE ORANGE COUNTY          **MEMORANDUM DECISION**
DEPARTMENT OF PROBATION, VICTORIA CASEY,            **AND ORDER**
ANN E. PUTNAM, VINCENT MORGIEWICZ, and
KROLL LABORATORY SPECIALISTS, INC.,

                                        Defendants.
----------------------------------------------------------------------x

Appearances:

Robert N. Isseks, Esq.
Law Offices of Robert N. Isseks
Middletown, NY
*Counsel for Plaintiff*

Hyun C. Kim, Esq.
Orange County Attorney
Goshen, New York
*Counsel for Defendants County of Orange, Orange County Department of Probation, Victoria Casey, Ann E. Putnam, and Vincent Morgiewicz*

Mitchel H. Ochs, Esq.
Anderson & Ochs LLP
New York, New York
*Counsel for Defendant Kroll Laboratory Specialists, Inc.*

Seibel, J.

Before the Court are (1) the Motion to Dismiss of Defendants County of Orange ("County"), the Orange County Department of Probation ("Probation Department"), Victoria Casey, Ann E. Putnam, and Vincent Morgiewicz (collectively, the "County Defendants"),[1] filed on January 5, 2009 (Doc. 7); and (2) the Motion to Dismiss of Defendant Kroll Laboratory Specialists, Inc. ("Kroll"), filed on January 30, 2009 (Doc. 15).

## I. Background

The following facts alleged in the First Amended Complaint are accepted as true for the purposes of the instant motions.

### A.  The Parties

On November 26, 2008, Plaintiff Eric Landon brought an action pursuant to 42 U.S.C. § 1983 ("Section 1983") on behalf of himself and all others similarly situated, against Defendants County, Probation Department, Casey, Putnam, Morgiewicz, and Kroll.  (Am. Compl. ¶¶ 5-9, 11.)  At all times relevant to this action, Casey was the Director of the Probation Department; Putnam was a Probation Officer employed by the Probation Department; and Morgiewicz was a Probation Supervisor employed by the Probation Department.  (*Id.* ¶¶ 7-9.)  Kroll is a corporation which at all times relevant to this action held a New York State Department of Health Laboratory Permit for comprehensive Forensic Toxicology and, pursuant to contracts

---

[1]  Plaintiff concedes that the Probation Department, as a subdivision of the County with no separate legal existence, is not a proper party to this action (Mem. of Law in Opp'n to Defs.' Mot. to Dismiss Pl.'s First Am. Compl. 29), and accordingly it is dismissed from this action with prejudice.

with the County, performed substance abuse testing services, which entailed analyzing oral fluid samples provided by probationers and reporting the presence or absence of illegal substances. (*Id.* ¶¶ 11, 14.)

**B. Facts**

On January 28, 2002, Plaintiff Eric Landon was convicted in the County Court, County of Orange, New York, of forgery in the second degree, a class D felony under the New York State Penal Law Section 170.10.  (*Id.* ¶ 12.)  He was sentenced to a five-year term of probation. (*Id.*)  One of the conditions of his probation was that he submit to random and periodic drug testing upon the direction of his probation officer.  (*Id.* ¶ 13.)  On December 17, 2007, Putnam ordered Plaintiff to submit an oral fluid sample to determine whether he was in compliance with his probation.  (*Id.* ¶ 15.)  Plaintiff submitted an oral sample, which was taken using a device manufactured by Orasure Technologies, Inc. ("Orasure") and purchased by the Probation Department and/or the County from Kroll.  (*Id.* ¶ 16.)  Putnam did not require, and Plaintiff did not give, a simultaneous urine sample.  (*Id.* ¶ 17.)   On the same day the oral sample was taken, December 17, 2007, Plaintiff independently obtained a blood test to protect himself from a possible false positive result from the oral sample.  This blood test came back negative for any illicit substances.  (*Id.* ¶ 19.)

Plaintiff's oral sample was sent by the Probation Department to Kroll to determine whether or not it contained illicit substances.  (*Id.* ¶ 18.)  Upon an initial screening, Kroll determined that the amount of THC[2] in the oral sample exceeded Kroll's screen cutoff level of

---

[2]  THC is an abbreviation for Tetrahydrocannabinol, which is the chief intoxicant in marijuana.  Merriam-Webster's Third New International Dictionary Unabridged, http://mwu.eb.com/mwu (last visited July 1, 2009).

1.0 ng/ml.  (*Id.* ¶ 21.)  On December 20, 2007, after having only screen-tested the oral sample, and without confirming it through any other testing (*id.* ¶ 24), Kroll informed the Probation Department that Plaintiff's oral sample tested positive for THC (*id.* ¶ 28).  Plaintiff contends that this conduct contravened the New York State Department of Health Laboratory Standards, which governs holders of Forensic Testing Laboratory Permits and requires the oral sample to be subjected to further confirmatory testing before being reported as positive.  (*Id.* ¶ 25.)

At the time the oral sample was screened by Kroll, Orasure's recommended screen test cutoff level for THC was 3.0 ng/ml, and the proposed screen test cutoff level of the United States Department of Health and Human Services, Substance Abuse and Mental Health Services Administration ("SAMHSA") was 4.0 ng/ml.  (*Id.* ¶¶ 22-23.)  In 2004, SAMHSA proposed revisions to its mandatory guidelines for federal workplace drug testing, which stated that a urine specimen must be collected at the same time an oral fluid sample is taken.  (*Id.* ¶ 26.)  Plaintiff alleges these proposed revisions were the industry-wide standard for forensic drug testing and that Kroll had actual and/or constructive notice of them at the time he was tested in December 2007.  (*Id.* ¶ 27.)

Plaintiff asserts that Defendant Kroll's written report to the Probation Department was issued "unlawfully, negligently, and as part of a policy of deliberate indifference to [P]laintiff's Fourteenth Amendment right to due process of law" for the following reasons:  (1) Kroll's screen test cutoff level of 1 ng/ml was lower than Orasure's recommended level of 3 ng/ml; (2) Kroll's cutoff level was lower than SAMHSA's proposed level of 4 ng/ml; (3) no simultaneous urine sample was taken; (4) Kroll's testing did not comply with relevant New York State standards requiring confirmation testing before reporting a positive result; and (5) Kroll had knowledge of

the potential for false positives when using an oral sample alone, and failed to disclose this information to the Probation Department.  (*Id.* ¶ 29.)  Plaintiff alleges that Kroll's conduct was performed systematically and in accordance with its ongoing procedures, policies, and practices. (*Id.* ¶ 30.)  Further, Plaintiff contends that Kroll's actions were carried out jointly and in concert with Defendants Casey, County of Orange, and the Probation Department.  (*Id.* ¶ 49.)

After receiving Kroll's written report regarding the oral sample, the Probation Department filed a violation of probation ("VOP") petition with the Orange County Court.  The petition, which was signed by Putnam and Morgiewicz, sought to revoke Plaintiff's probationary sentence and have him re-sentenced to a period of incarceration.  (*Id.* ¶ 31.)  The petition charged Plaintiff with violating two conditions of his probationary sentence by using marijuana and by falsely reporting to his officer that he had not used drugs.  (*Id.* ¶ 32.)

On January 2, 2008, one day before Plaintiff's probationary period was to expire, he was arraigned before the Orange County Court on the VOP petition.  (*Id.* ¶ 34.)  At this time, he provided the court and the Probation Department with the results of his independently obtained blood test.  He also submitted to a urine test on this date, which came back negative for THC. (*Id.* ¶¶ 34-35.)  Despite this evidence, the Probation Department chose to continue the VOP proceedings.  (*Id.* ¶ 36.)  Plaintiff subsequently appeared before the Orange County Court four more times in 2008:  on January 22, February 15, March 12, and March 20.  (*Id.* ¶¶ 37-40.)  On March 20, 2008, despite the County Defendants' insistence that the VOP proceedings continue, the Orange Country District Attorney elected not to go forward with the revocation hearing and the Probation Department withdrew the VOP petition.  (*Id.* ¶ 40.)  Thus, Plaintiff alleges that the proceedings terminated in his favor on the merits.  (*Id.*)

Plaintiff contends that Putnam and Morgiewicz lacked probable cause to file the VOP petition and, therefore, owed Plaintiff a duty not to file it.  (*Id.* ¶ 33.)  Plaintiff further alleges that the conduct of Putnam, Morgiewicz, and Casey was "arbitrary, capricious, and irrational and was carried out with malice and as part of a policy or practice of deliberate indifference to [his] welfare, property and liberty interests and Fourteenth Amendment right to due process of law." (*Id.* ¶ 45.)  According to Plaintiff, the acts of Putnam and Morgiewicz were the result of inadequate training by Casey, the County, and the Probation Department.  (*Id.* ¶ 46.)  Finally, Plaintiff asserts that, as a result of Defendants' conduct, he suffered a "loss of freedom" because he had to serve an extended probationary term, as well as emotional and psychological harm, humiliation, and monetary loss.[3]  (*Id.* ¶ 42.)

The County Defendants filed a Motion to Dismiss on January 5, 2009, arguing that Plaintiff failed to allege the elements of a malicious prosecution claim pursuant to Section 1983; the County Defendants are entitled to immunity; and Plaintiff does not sufficiently allege that the County failed to train or was acting pursuant to a custom, policy or practice.  (Doc. 7.) Defendant Kroll filed a Motion to Dismiss on January 30, 2009, on the basis that Kroll is not a state actor and Plaintiff failed to allege a deprivation of his constitutional rights.  (Doc. 15.) Plaintiff filed an Opposition to Defendants' Motions to Dismiss on January 16, 2009.  (Doc. 10.)

---

[3]  Plaintiff seeks to represent a "class of all individuals adversely affected by Defendant Kroll's systematic tortuous [sic] conduct."  (Am. Compl. ¶ 53.)  Plaintiff includes in this class all individuals who submitted an oral sample which was screened by Kroll and reported positive for THC.  (*Id.*)  Plaintiff also proposes a subclass made up of members who were tested by Kroll pursuant to contracts with the state of New York.  (*Id.* ¶ 55.)  Plaintiff contends that a class action is appropriate because the members of the class are so numerous as to render joinder impracticable, and a common question of law and fact exists, specifically, "whether Kroll has been systematically negligent in the manner in which it has been testing, analyzing, and reporting oral fluid samples for THC for forensic purposes."  (*Id.* ¶¶ 56-57.)

## II. Discussion

### A.  Standard of Review

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555 (internal citations and quotation marks omitted).  While Federal Rule of Civil Procedure 8 "marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, . . . it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."  *Ashcroft*, 129 S. Ct. at 1950.

In considering whether a complaint states a claim upon which relief can be granted, the court "begin[s] by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth," and then determines whether the remaining well-pleaded factual allegations, accepted as true, "plausibly give rise to an entitlement to relief."  *Id.* at 1950. Deciding whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id.* "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'shown' – 'that the pleader is entitled to

relief.'" *Id.* (quoting Fed. R. Civ. P. 8(a)(2)).

**B.  Section 1983**

Section 1983 provides in pertinent part that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . ."  42 U.S.C. § 1983.  To state a claim for relief pursuant to Section 1983, a plaintiff must establish (1) the deprivation of a right secured by the Constitution or laws of United States, and (2) that the alleged deprivation was committed under color of state law.  *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50 (1999).

**1.  Deprivation of a Constitutional Right**

Although Plaintiff alleges that Defendants acted with "deliberate indifference to [his] welfare, property, and liberty interests and Fourteenth Amendment right to due process of law" (Am. Compl. ¶¶ 45, 50), he contends in his Opposition that the First Amended Complaint states a claim for malicious prosecution pursuant to Section 1983 (Opp'n 1-3).  In *Albright v. Oliver*, 510 U.S. 266, 268 (1994), the Supreme Court held that the Fourteenth Amendment right to substantive due process does not support a federal claim for malicious prosecution.  The Second Circuit later held, however, that *Albright* does not bar the assertion of a federal claim for malicious prosecution under the Fourth Amendment.  *See Singer v. Fulton*, 63 F.3d 110, 114 (2d Cir. 1995).  The Fourth Amendment right implicated by a malicious prosecution claim is the right to be "free of unreasonable seizure of the person," which the *Singer* Court described as "the right to be free of unreasonable or unwarranted restraints on personal liberty."  *Id.* at 16.

Although Plaintiff does not explicitly allege a violation of his Fourth Amendment rights, viewing the First Amended Complaint in the light most favorable to him, I find that his allegations amount to a claim that Defendants' conduct resulted in an "unreasonable or unwarranted restraint[] on [his] personal liberty."  *Id*.  Thus, I will review the First Amended Complaint to determine whether it states a claim for malicious prosecution pursuant to the Fourth Amendment.[4]

A malicious prosecution claim brought under Section 1983 is governed by state law. *Russell v. Smith*, 68 F.3d 33, 36 (2d Cir. 1995); *Janetka v. Dabe*, 892 F.2d 187, 189 (2d Cir. 1989).  Given that "public policy favors bringing criminals to justice" and allowing accusers "room for benign misjudgments," the "law . . . places a heavy burden on malicious prosecution plaintiffs."  *Smith-Hunter v. Harvey*, 734 N.E.2d 750, 752 (N.Y. 2000).  To state a claim for malicious prosecution, state law requires that Plaintiff allege:  (1) commencement of a criminal proceeding against him, (2) termination of that proceeding in his favor, (3) absence of probable cause for the initiation or continuation of the proceeding, and (4) malice.  *See Posr v. Doherty*, 944 F.2d 91, 100 (2d Cir. 1991).  In addition, Plaintiff must "show some deprivation of liberty consistent with the concept of 'seizure' . . . . to ensure that [he] has suffered a harm of constitutional proportions."  *Singer*, 63 F.3d at 116; *accord Rutigliano v. City of New York*, No. 08-CV-0531, 2009 U.S. App. LEXIS 9559, at *7 (2d Cir. May 1, 2009) ("To sustain a § 1983 malicious prosecution claim, the state law elements must be met, and there must also be a showing of a sufficient post-arraignment liberty restraint to implicate the plaintiff's Fourth

---

[4]  Plaintiff should clarify the basis of his claim if he amends his First Amended Complaint as discussed below.

Amendment rights." (internal quotation marks omitted)).

### a.  Fourth Amendment Seizure

To state a federal malicious prosecution claim, Plaintiff must allege an unreasonable seizure by a state actor in violation of the Fourth Amendment.  *Murphy v. Lynn*, 118 F.3d 938, 944 (2d Cir.1997); *Singer*, 63 F.3d at 116 ("A plaintiff asserting a Fourth Amendment malicious prosecution claim under § 1983 must . . . show some deprivation of liberty consistent with the concept of 'seizure.'").  "The Fourth Amendment right implicated in a malicious prosecution action is the right to be free of unreasonable seizure of the person – i.e., the right to be free of unreasonable or unwarranted restraints on personal liberty."  *Rohman v. N.Y. City Transit Auth.*, 215 F.3d 208, 215 (2d Cir. 2000).  In addition,"since the gist of a claim for malicious prosecution is abuse of the judicial process, a plaintiff pursuing such a claim under § 1983 must [also] show that the seizure resulted from the initiation or pendency of judicial proceedings." *Murphy*, 118 F.3d at 944.  Unreasonable seizures protected against by the Fourth Amendment are not limited to physical detention.  *Id.* at 945.  Rather, the imposition of restrictive conditions of release may constitute a seizure within the meaning of the Fourth Amendment.  *Id.* at 946. For example, requiring one's appearance in court and curtailing one's constitutional right to travel as conditions of release may constitute Fourth Amendment seizures.  *See Rohman*, 215 F.3d at 216; *Murphy*, 118 F.3d at 946.

Here, as a result of the County Defendants' initiation of the VOP proceeding against Plaintiff, Plaintiff's presence was required in court five times.  In addition, Plaintiff's period of supervision, which had been scheduled to expire on January 3, 2008, was extended until March 20, 2008.  (Am. Compl. ¶ 42.)  The terms of his probation prohibited Plaintiff from, among many

other things, traveling outside of Orange County for longer than a week without permission.[5]

(Kim Aff. Ex. C.)  Viewing the First Amended Complaint in the light most favorable to the

Plaintiff, these restrictions and his continuation under supervision, at least at the pleading stage,

constitute restraints on personal liberty or "seizures" within the meaning of the Fourth

Amendment.[6]  *See Rothman*, 215 F.3d at 216 (five court appearances before charges were

dropped and requirement that plaintiff remain in state as condition of post-arraignment release

were sufficient restraints of liberty to constitute Fourth Amendment seizures); *Murphy*, 118 F.3d

at 946 (eight court appearances and restricting plaintiff's right to travel outside of New York

State as condition of pretrial release were Fourth Amendment seizures); *Dorman v. Castro*, 214

F. Supp. 2d 299, 308 (E.D.N.Y. 2002) (issuance of appearance ticket and requirement to appear

in court, even without restrictions placed on interstate travel, constituted Fourth Amendment

---

[5] When deciding a motion to dismiss, ordinarily the court's "review is limited to the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference."  *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007); *accord Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006).  There are, however, circumstances under which it is appropriate for a court to consider documents outside of the complaint.  For example, the court may consider a document that is "integral" to the complaint, partially quoted in the complaint, or relied upon by the plaintiff in drafting the complaint if there is no dispute regarding the document's authenticity or accuracy, and there is no issue of fact as to its relevance.  *See Faulkner*, 463 F.3d at 134.  The Court considers Exhibit C to Hyun Chin Kim's Affidavit in Support of the County Defendants' Motion to Dismiss, which lists the conditions of Plaintiff's probation, because it is integral to the First Amended Complaint and was relied upon by Plaintiff in drafting the First Amended Complaint, and because there is no dispute as to its authenticity or accuracy.

[6] The cases cited by the County Defendants, which hold that the requirement of a plaintiff's appearance in court alone is not a deprivation of liberty sufficient to implicate the Fourth Amendment, are inapposite because in those cases no other conditions of release had been imposed on the plaintiffs.  *See Thomas v. City of New York*, No. 05-CV-6449, 2008 U.S. Dist. LEXIS 61555, at *13 (S.D.N.Y. Aug. 12, 2008); *Zak v. Robertson*, 249 F. Supp. 2d 203, 207 (D. Conn. 2003); *Niemann v. Whalen*, 911 F. Supp. 656, 670 (S.D.N.Y. 1996).

seizure).

### b.  Commencement or Continuation of a Criminal Proceeding

To state a claim for malicious prosecution, Plaintiff must establish that a criminal proceeding was commenced or continued against him.  *Rutigliano*, 2009 U.S. App. LEXIS 9559, at *6; *Posr,* 944 F.2d at 100.  New York Criminal Procedure Law defines a criminal proceeding as "any proceeding which (a) constitutes a part of a criminal action or (b) occurs in a criminal court and is related to a prospective, pending or completed criminal action, either of this state or of any other jurisdiction, or involves a criminal investigation."  N.Y. Crim. Proc. Law § 1.20(18).  A VOP proceeding occurs in criminal court and is related to a completed criminal action and, therefore, appears to fit squarely within the definition of a criminal proceeding as defined by New York State law.  *See id.* § 410.70(5) (hearing on violation is held before a criminal court, which at the conclusion of the hearing, "may revoke, continue or modify the sentence of probation or conditional discharge"); *Darvin M. v. Jacobs*, 509 N.E.2d 336, 337 (N.Y. 1987) (probation revocation proceeding is criminal proceeding brought after completed criminal action within meaning of N.Y. Crim. Pro. Law § 1.20(18)); *People v. Whitehead*, 638 N.Y.S.2d 856, 857 (Sup. Ct. 1994) (same).  Although the Court has found no authority addressing the specific issue in the context of a malicious prosecution claim, a number of courts considering the issue in other contexts have held that a probation revocation proceeding is a criminal proceeding.  *See, e.g., Darvin M.*, 509 N.E.2d at 337 (probation revocation proceeding was criminal proceeding, not criminal action, for purposes of determining whether probation department attorneys properly appeared as counsel); *People v. Recor*, 619 N.Y.S.2d 186, 187 (App. Div. 1994) (violation of probation giving rise to revocation proceeding is criminal

-12-

proceeding); *Whitehead*, 638 N.Y.S.2d at 857 (probation revocation proceeding is criminal proceeding pursuant to N.Y. Crim. Pro. Law § 1.20(18)).[7]   Thus, viewing the First Amended Complaint in the light most favorable to Plaintiff, I find that he has adequately alleged that a criminal proceeding was commenced and continued against him.

Plaintiff must also allege that each of the Defendants was responsible for commencing and/or continuing the criminal proceeding against him.[8]   *See Rothstein v. Carriere*, 373 F.3d 275, 293-94 (2d Cir. 2004).   Plaintiff has done so with respect to the County Defendants. Specifically, he asserts that the Probation Department filed with the County a VOP petition, which was signed by Defendants Putnam and Morgeiwicz, and that these Defendants and Casey later insisted upon continuing the VOP action despite Plaintiff's presentation of purportedly exculpatory evidence.  (Am. Compl. ¶¶ 31, 36-40.)  Plaintiff has not, however, pleaded this element with respect to Defendant Kroll.  "[R]eporting a crime to law enforcement and giving

---

[7]   Other courts have, however, found that a violation of probation hearing is not a criminal proceeding.  *See, e.g., People v. Jangrow,* 823 N.Y.S.2d 627, 628 (App. Div. 2006) (violation of probation proceeding not criminal proceeding in context of determining whether plea allocution was deficient); *People v. Haas*, 666 N.Y.S.2d 324, 326 (App. Div. 1997) (probation violation hearing not criminal proceeding in context of determining whether statutory provision governing such hearings comported with constitutional and statutory mandates); *People v. Neuroth*, 568 N.Y.S.2d 837, 838 (App. Div. 1991) (probation violation hearing not criminal proceeding in context of determining proper standard of review).

[8]   This Circuit's case law "does not forbid a § 1983 malicious prosecution claim premised on a civil or administrative proceeding; however, because such claims must . . . be premised on a violation of Fourth Amendment rights, it is unlikely that a civil proceeding . . . would implicate constitutional rights in a manner that would warrant redress under § 1983."  *Washington v. County of Rockland*, 373 F.3d 310, 317 (2d Cir. 2004); *accord Zahrey v. City of New York*, No. 98-CV-4546, 2009 U.S. Dist. LEXIS 8177, at *87 (S.D.N.Y. Jan. 7, 2009) ("While this circuit will sometimes entertain section 1983 malicious prosecution claims based on civil proceedings, 'such claims must . . . be premised on a violation of Fourth Amendment rights.'" (quoting *Washington*, 373 F.3d at 317)).

testimony does not constitute the 'initiation' of a criminal prosecution." *Rothstein*, 373 F.3d at

293.  Nor does "'merely respond[ing] to requests for information.'"  *Baba-Ali v. City of New*

*York*, 979 F. Supp. 268, 276 (S.D.N.Y. 1997) (quoting *Whittaker v. Duke*, 473 F.Supp. 908, 909

(S.D.N.Y. 1979)).  Plaintiff must allege more – specifically, that Kroll "played an active role in

the prosecution, such as giving advice and encouragement or importuning the authorities to act."

*Rothstein*, 373 F.3d at 294 (internal citations and quotation marks omitted) ("mere fact that a

witness provided false information to the government does not warrant a conclusion that the

witness initiated the prosecution where the rest of the evidence suggests otherwise").

Plaintiff contends only that Kroll informed the Probation Department by written report of

the results of the screen test with "knowledge of the potential for false positive readings for THC

when using oral fluid without a simultaneous urine sample and failed to disclose same to the

Probation Department."  (Am. Compl. ¶¶ 28-29.)   Viewing these allegations in the light most

favorable to Plaintiff, I find that Plaintiff has not alleged that Kroll played an active role in the

prosecution or otherwise encouraged the County Defendants to act.  Kroll merely reported

apparently truthful information to the County Defendants at their request.  Plaintiff does not

claim that Kroll made the decision or in any way pressed the County Defendants to initiate or

continue the VOP proceeding.  Moreover, Plaintiff's allegation that Kroll did not disclose to the

County Defendants that there was a potential for a false positive does not render plausible the

contention that Kroll initiated the VOP proceeding.  Even knowingly providing false information

does not necessarily suffice for initiation.  *See Rothstein*, 373 F.3d at 294.  Here, Plaintiff alleges

only that Kroll omitted information about the possibility of a false positive, which is far short of

knowing the information it provided was false.  Because Kroll could have omitted information

about the possibility of false positives while still believing that it was providing truthful information, and in light of the absence of any allegations regarding Kroll's active participation or interest in the VOP proceeding against Plaintiff, Plaintiff has not stated a plausible claim for malicious prosecution against Kroll.

### c. Termination of the Criminal Proceeding in Plaintiff's Favor

Plaintiff must next allege that the criminal proceeding terminated in his favor – *i.e.*, that there was "a final termination that [wa]s not inconsistent with innocence." *Id.* at 286; *accord Russell*, 68 F.3d at 36 (when proceeding does not end in acquittal, plaintiff must show that final decision was indicative of innocence). "As a general rule, under the common law any final termination of a criminal proceeding in favor of the accused, such that the proceeding cannot be brought again, qualifies as a favorable termination for purposes of a malicious prosecution action." *Smith-Hunter*, 734 N.E.2d at 753 (holding that dismissal on statutory speedy trial grounds was a "favorable termination" of criminal action). The state's abandonment of a prosecution under circumstances not inconsistent with the plaintiff's innocence may constitute a favorable termination. *See Fulton v. Robinson*, 289 F.3d 188, 196 (2d Cir. 2002) ("state's effective abandonment of a prosecution, which resulted in a dismissal for violation of the accused's speedy trial rights, without an adjudication of his guilt or innocence, constituted a favorable termination"); *Garrett v. Port Auth.*, No. 04-CV-7368, 2006 U.S. Dist. LEXIS 55548, *14-15 (S.D.N.Y. Aug. 7, 2006) (although circumstances in which act of withdrawal or abandonment by prosecutor may be used to prove favorable termination have been narrowed, it may, in certain circumstances, still be considered favorable termination); *Lawson v. N.Y. Billiards Corp.*, 331 F. Supp. 2d 121, 131 (E.D.N.Y. 2004) ("A formal abandonment of the

proceedings by the public prosecutor constitutes favorable termination." (internal quotation marks omitted)); *Smith-Hunter*, 734 N.E.2d at 754 ("[D]ismissal without prejudice qualifies as a final, favorable termination if the dismissal represents the formal abandonment of the proceedings by the public prosecutor." (internal quotation marks omitted)); *Verboys v. Town of Ramapo*, 785 N.Y.S.2d 496, 497 (App. Div. 2004) (criminal proceeding, which was dismissed without prejudice, terminated in plaintiff's favor where record demonstrated that prosecution elected not to proceed with charges because allegations were not supported by evidence).  Here, Plaintiff contends that the Orange County District Attorney voluntarily refused to go forward with the revocation hearing and, as a result, the Probation Department withdrew the petition. (Am. Compl. ¶ 40.)  He further alleges that his extended period of probation ended on the same day.  (*Id.* ¶ 42.)  Thus, it appears Plaintiff has adequately alleged that the VOP proceeding was terminated in his favor because he contends that the District Attorney voluntarily abandoned the prosecution under circumstances not inconsistent with his innocence – i.e., Plaintiff's presentation of purportedly exculpatory evidence – and in circumstances under which the petition could not be re-filed because Plaintiff's probationary period was over.  *See Posr v. Court Officer Shield #207*, 180 F.3d 409, 418 (2d Cir. 1999) (termination carries no implications about legitimacy of prosecution where possibility remains open that government will pursue same charges against same defendant).  Nevertheless, because I am permitting Plaintiff to amend the First Amended Complaint to address other issues (*see* Parts II.B.1.d, II.B.1.e below), Plaintiff is directed to specify, in any second amended complaint he files, what reasons were given by the District Attorney for deciding not to go forward with the VOP hearing and whether, under state law, it could be re-prosecuted.

-16-

### d.  Probable Cause

Plaintiff must plead facts sufficient to establish a lack of probable cause for the County Defendants' initiation and/or continuation of the VOP proceeding.  *See Posr*, 944 F.2d at 100. "Probable cause . . . exists where the facts and circumstances are sufficient to warrant a person of reasonable caution in the belief that (1) an offense has been or is being committed (2) by the person to be arrested."  *See Rothstein*, 373 F.3d at 292 (internal quotation marks omitted).  In the malicious prosecution context, "probable cause has [also] been defined as 'the knowledge of facts, actual or apparent, strong enough to justify a reasonable man in the belief that he has lawful grounds for prosecuting the defendant in the manner complained of."  *Ferlito v. City of Oswego*, No. 03-CV-96, 2006 U.S. Dist. LEXIS 54561, at *33-34 (N.D.N.Y Aug. 4, 2006) (quoting *Rounseville v. Zahl*, 13 F.3d 625, 629 (2d Cir. 1994)).

The facts as alleged in the First Amended Complaint show that there was probable cause to file the VOP petition and initiate the VOP proceeding against Plaintiff.  Plaintiff's December 17, 2007 oral fluid sample tested positive for marijuana (Am. Compl. ¶ 21), the use of which was unquestionably a violation of the terms of Plaintiff's probation (*id.* ¶ 13; Kim Aff. Ex. C). Moreover, Plaintiff contends that Kroll "failed to disclose" to the County Defendants the potential for false positive readings for THC with oral fluid samples.  (Am. Compl. ¶ 29.)  Thus, Plaintiff admits that the County Defendants were not aware of this risk and had no reason to doubt the accuracy of the results of the December 17, 2007 oral fluid test.[9]  Accordingly,

_____

[9]  Plaintiff also alleges in a conclusory (and contradictory) fashion that "the Probation Department had actual or constructive knowledge of the potential for false positive readings for marijuana when using oral fluid testing."  (Am. Compl. ¶ 33.)  The Court need not accept this allegation as true and, even if it did, the mere potential for a false positive does not change the fact that the County Defendants had knowledge of facts strong enough to justify a reasonable

Plaintiff's malicious prosecution claim against the County Defendants is dismissed to the extent that it is based on the filing of the VOP petition and initiation of the VOP proceeding.

I must next assess whether the County Defendants lacked probable cause to continue the VOP proceeding after Plaintiff presented purportedly exculpatory evidence.  On January 2, 2008, at his arraignment before the Orange County Court, Plaintiff presented to the County Defendants the results of his independent blood test, which indicated that he tested negative for THC on December 17, 2007.[10]  (*Id.* ¶ 34.)  Despite this information, Plaintiff contends that the County Defendants improperly insisted upon continuing the proceedings until March 20, 2008, when the VOP petition was finally withdrawn.  (*Id.* ¶¶ 36-40.)

The continuation of a criminal proceeding without probable cause may also amount to malicious prosecution.  "'Under New York law, even when probable cause is present at the time of arrest, evidence could later surface which would eliminate that probable cause.  In order for probable cause to dissipate, the groundless nature of the charge must be made apparent by the discovery of some intervening fact.'"  *Kinzer v. Jackson*, 316 F.3d 139, 144 (2d Cir. 2003) (quoting *Lowth v. Town of Cheektowaga*, 82 F.3d 563, 571 (2d Cir. 1996)).  In addition, the "failure to make a further inquiry when a reasonable person would have done so may be evidence of lack of probable cause."  *Lowth*, 82 F.3d at 571 (internal quotation marks omitted).

This does not mean, however, that a criminal defendant's mere presentation of contradictory evidence dissipates probable cause.  The prosecution must have a reasonable time

---

person in the belief that there were lawful grounds for initiating VOP proceedings against Plaintiff.

[10]  A negative urine analysis on January 2, 2008, is too far removed from the December 17, 2007 test to undermine the earlier result.

to investigate and evaluate that evidence.  In the instant case, for example, the Defendants would be permitted to assess the authenticity of the report Plaintiff presented, the reputation of the independent lab, the reliability of the methods it used, whether it was in fact Plaintiff who gave the blood sample it tested, and any other issues relevant to the weight to be given to Plaintiff's evidence.  They would also be permitted to revisit Kroll's procedures to determine whether its results were reliable.  Only if Defendants unreasonably failed to take such steps or pursued the VOP proceeding after its baselessness was apparent would a malicious prosecution claim stand.

The First Amended Complaint, however, presents no information on these issues.  It states merely that the VOP proceeding was adjourned four times.  It does not state what reasons were proffered for the adjournments or what occurred between the adjourned dates.  If those ten weeks were reasonably spent investigating the issues, there was no absence of probable cause.  If, on the other hand, Defendants did nothing during those ten weeks to determine if Plaintiff's evidence undermined their own, they may be liable.  To state a valid claim in these circumstances, Plaintiff must allege that Defendants were not exercising reasonable diligence during that time, or that it became apparent during that time that his result was reliable and theirs was not.  At this stage, Plaintiff has not alleged that, during the period between January 2, 2008, and March 20, 2008, Defendants unreasonably failed to investigate or learned that their VOP charge was groundless, and thus the malicious prosecution claim is insufficient.

Plaintiff may, however, provided that he has a good faith basis for doing so, amend his First Amended Complaint to include factual allegations which show that Defendants lacked probable cause to continue the VOP proceeding against him after January 2, 2008.  *See* Fed. R. Civ. P. 15(a)(2) ("The [C]ourt should freely give leave [to amend] when justice so requires.").

-19-

Specifically, Plaintiff should plead facts regarding the reasons proffered by Defendants for the four adjournments and, to the extent he knows, what actions, if any, Defendants took to investigate Plaintiff's purportedly exculpatory evidence and the results of the December 17, 2007 oral sample.

### e.  Malice

Finally, Plaintiff must allege that the County Defendants acted with malice in continuing the VOP proceeding against him.  *See Posr*, 944 F.2d at 100.  "Under New York law, malice does not have to be actual spite or hatred, but means only that the defendant must have commenced the criminal proceeding due to a wrong or improper motive, something other than a desire to see the ends of justice served."  *Lowth*, 82 F.3d at 573 (internal quotation marks omitted); *accord Brogdon v. City of New Rochelle*, 200 F. Supp. 2d 411, 423 (S.D.N.Y. 2002).  "There must be a showing of some deliberate act punctuated with awareness of conscious falsity to establish malice."  *Korthas v. City of Auburn*, No. 04-CV-537, 2006 U.S. Dist. LEXIS 38745, at *15 (N.D.N.Y June 9, 2006).  Although actual malice and lack of probable cause are independent elements of a malicious prosecution claim, they do relate to one another.  *See Rounseville*, 13 F.3d at 631.  "In most cases, the lack of probable cause – while not dispositive – tends to show that the accuser did not believe in the guilt of the accused, and malice may be inferred from the lack of probable cause."  *Lowth*, 82 F.3d at 573 (internal quotation marks omitted).  Plaintiff has not alleged improper motive such as deliberate extension of the VOP proceedings after Defendants knew or should have known the charges were baseless.  But he may attempt to include proper allegations of malice in his second amended complaint, if he can do so in good faith.

### 2.  Color of State Law

To state a claim for relief pursuant to Section 1983, Plaintiff must also allege that each of the Defendants was acting under color of state law in taking the complained-of actions. "According to the Supreme Court, 'a person acts under color of state law only when exercising power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'"  *Back v. Hastings on Hudson Union Free Sch. Dist.*, 365 F.3d 107, 122-123 (2d Cir. 2004) (quoting *Polk County v. Dodson*, 454 U.S. 312, 317-18 (1981)). "State employment is generally sufficient to render the defendant a state actor."  *Id.*

### a. Casey

Plaintiff alleges that Defendant Casey, as the Director of Probation, was the official responsible for implementing the Probation Department's policies, practices and procedures, and for training all of the Department's officers and supervisors.  (Am. Compl. ¶ 7.)  Plaintiff also avers that Casey was the final policymaker for the Probation Department and the County, and that all of the complained-of conduct occurred under her supervision and direction and was the result of her failure to properly train Defendants with respect to drug screening.  (*Id.* ¶¶ 10, 44, 46.)  Moreover, Plaintiff contends that Casey insisted on continuing the VOP proceeding on five separate occasions despite Plaintiff's presentation of allegedly exculpatory information.  (*Id.* ¶¶ 36-40.)  Plaintiff has thus sufficiently alleged that Casey was acting under color of state law when she took the complained-of actions because she was acting in her official capacity as Probation Director.  *See Patterson v. County of Oneida*, 375 F.3d 206, 230 (2d Cir. 2004) ("[G]enerally, a public employee acts under color of state law while acting in his official capacity or while exercising his responsibilities pursuant to state law." (quoting *West v. Atkins*,

487 U.S. 42, 49-50 (1988)).

### b. Putnam and Morgiewicz

Plaintiff alleges that Putnam, who was Plaintiff's Probation Officer, and Morgiewicz, who was a Probation Supervisor, signed the VOP petition and insisted that the VOP proceeding continue on five separate occasions despite Plaintiff's presentation of allegedly exculpatory information.  (Am. Compl. ¶¶ 8-9, 31, 36-40.)  Because Plaintiff alleges that these Defendants took the complained-of actions while acting in their official capacities, he has adequately alleged that they were acting under color of state law.  *See Patterson*, 375 F.3d at 230.

### c. The County

To state a Section 1983 claim against a municipality, the plaintiff must allege that the deprivation of his or her constitutional right was caused by a custom or policy of the municipality, as municipal liability may not simply be based on a theory of *respondeat superior*. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978).  A policy, custom, or practice of the municipal entity may be inferred where "the municipality so failed to train its employees as to display a deliberate indifference to the constitutional rights of those within its jurisdiction." *Patterson*, 375 F.3d at 226 (internal quotation marks omitted).  In addition, a municipality may be held liable for the acts of a municipal official who possessed final policymaking authority with respect to the challenged conduct.  *See Jeffes v. Barnes*, 208 F.3d 49, 57-58 (2d Cir. 2000).

Plaintiff asserts that Defendants' actions were taken pursuant to a policy or practice of deliberate indifference to Plaintiff's welfare, property and liberty interests, and that the County failed to adequately train Defendants in the proper manner of drug screening.  (Am. Compl. ¶¶ 45-46.)  Although these allegations are conclusory, there are (just barely) sufficient facts alleged

in the First Amended Complaint from which the Court can infer such a policy or custom and failure to train.  *See Davis v. County of Nassau*, 355 F. Supp. 2d 668, 678 (E.D.N.Y. 2005) ("[M]ere assertions that a municipality has a custom or policy of violating constitutional rights are insufficient to state a Section 1983 claim in the absence of allegations of fact tending to support, at least circumstantially, such an inference." (internal quotation marks omitted)). Plaintiff alleges that Putnam took the December 17, 2007 oral sample without taking a simultaneous urine sample (Am. Compl. ¶¶ 17, 33), and that the County "contracted [with] Kroll to analyze oral fluid samples" to determine whether probations were in compliance with the terms of their probations (*id.* ¶ 14).  On the basis of these facts, Plaintiff has pleaded that the County had a policy or custom of taking oral fluid samples without taking a simultaneous urine sample and that such practice was in contravention of numerous guidelines.  Accepting those allegations as true, he has sufficiently alleged that the County failed to train members of the Probation Department in proper drug screening procedures.  Moreover, having alleged that Casey was a final policymaker and responsible for the purportedly wrongful continuation of the proceedings against Plaintiff, Plaintiff has pleaded sufficient facts to state a claim for malicious prosecution against the County.  *See Jeffes*, 208 F.3d at 57 (municipality may be held liable where deprivation of constitutional right was caused by official who had final policymaking authority and whose actions, therefore, represented municipality's official policy).  Accordingly, Plaintiff has adequately pleaded the County's responsibility for the complained-of actions.

### C.  Immunity

The individual County Defendants allege that they are entitled to absolute immunity because their actions were "prosecutorial in nature" or, in the alternative, that they are entitled to

qualified immunity because it was objectively reasonable for them to believe that their actions did not violate a constitutionally protected right.  (Mem. of Law on Behalf of County Defs. 16-17.)  "[E]xecutive officials receive qualified immunity, whereby government officials performing discretionary functions . . . are shielded from liability . . . insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Scotto v. Almenas*, 143 F.3d 105, 110 (2d Cir. 1998) (internal quotation marks omitted) (alterations in original).  "A limited number of officials are entitled to absolute immunity from § 1983 damages liability for their official acts," if those acts are judicial or prosecutorial in nature.  *Id.* at 110-11.  "Courts take a functional approach when determining whether an official receives qualified or absolute immunity; the level of immunity flows not from rank or title or location within the Government, but from the nature of the [official's] responsibilities."  *Id.* at 110 (internal quotation marks omitted) (alterations in original); *accord Stewart v. Lattanzi*, 832 F.2d 12, 13 (2d Cir. 1987).  "Parole officers . . . receive absolute immunity for their actions in initiating parole revocation proceedings and in presenting the case for revocation to hearing officers, because such acts are prosecutorial in nature."  *Scotto*, 143 F.3d at 112.  But where the officer serves more as an investigator than a prosecutor, absolute immunity does not lie.  *See id.* at 112-13 (parole officer who issued violation report to supervisor and did not have discretionary authority to initiate parole revocation proceedings was not entitled to absolute immunity); *Taylor v. Sullivan*, 980 F. Supp. 697, 707-08 (S.D.N.Y. 1997), *aff'd on other grounds*, No. 97-2831, 1998 U.S. App. LEXIS 27980 (2d Cir. Oct. 27, 1998) (parole officers not responsible for initiating parole revocation proceedings or presenting case for revocation are not entitled to absolute immunity because their actions are not prosecutorial).

-24-

I cannot tell on the present record what authority or responsibility each individual County Defendant had with respect to the decision to continue the VOP proceeding against Plaintiff after January 2, 2008.  It seems unlikely that it was purely prosecutorial, given that a prosecutor from the Orange County District Attorney's Office was involved.  In any event, given that the nature of Defendants' actions (including what actions they took after January 2, 2008, and when, if ever, the baselessness of the VOP action became apparent) must be examined before a decision regarding immunity is made, the Court cannot say as a matter of law at this stage whether the individual County Defendants are entitled to either absolute or qualified immunity.  *See King v. Simpson*, 189 F.3d 284, 287-88 (2d Cir. 1999) (dismissal on either qualified or absolute immunity grounds premature on motion to dismiss; additional development of record required); *Scotto*, 143 F.3d at 113 (remanding to district court for further factual development of limited record, which did not permit decision regarding defendant's entitlement to immunity); *Stewart*, 832 F.2d at 13 (remanding for factual inquiry regarding whether duties of defendants were judicial or prosecutorial entitling them to absolute immunity, or administrative entitling them to qualified immunity).  Thus, assuming a second amended complaint is filed, the individual County Defendants may re-assert their absolute and/or qualified immunity defenses again at the appropriate time if warranted.

*     *     *

In sum, Kroll's Motion to Dismiss is granted in its entirety with prejudice.  Granting Plaintiff leave to file a second amended complaint against Kroll would be futile because the deficiency in Plaintiff's First Amended Complaint with respect to Kroll – that Kroll did not commence or continue a criminal proceeding against Plaintiff – "is substantive; better pleading will not cure it."  *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (repleading not permitted where futile because complaint liberally read did not suggest that claim was inadequately or inartfully pleaded; rather, deficiency was substantive).  The County Defendants' Motion to Dismiss is also granted in its entirety without prejudice, except as to the Probation Department, the Motion of which is granted with prejudice.  Plaintiff may file a second amended complaint against the County Defendants, if there is a good faith basis to do so, that: (1) specifies the reasons stated by the District Attorney for not pursuing the VOP proceeding and whether, under state law, that proceeding could be re-filed; (2) includes facts sufficient to render plausible Plaintiff's claim that there was no probable cause to continue the VOP proceeding against him after January 2, 2008, and that the County Defendants continued the proceeding with malice.

## III. Conclusion

For the foregoing reasons, the County Defendants' Motion to Dismiss is **GRANTED** without prejudice, except as to the Probation Department, the Motion of which is granted with prejudice.  Defendant Kroll's Motion to Dismiss is **GRANTED** with prejudice.  The Clerk of Court is respectfully directed to terminate the pending motions (Docs. 7, 15) and enter judgment for Defendant Kroll.  If a second amended complaint is not filed by August 13, 2009, the Clerk of Court is respectfully directed to enter judgment for the remaining Defendants.  If a second

amended complaint is filed by August 13, 2009, Plaintiff and the County Defendants are directed

to appear at a case management conference on September 11, 2009, at 9:15 a.m.


**SO ORDERED.**

Dated: July 23, 2009
      White Plains, New York

                      CATHY SEIBEL, U.S.D.J.